**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEVEN BASILE, on behalf of** | : | |
| **himself and others similarly situated,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:15-cv-01518** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| | : | |
| **STREAM ENERGY PENNSYLVANIA,** | : | |
| **LLC, <u>et al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court are Defendants' motion to dismiss (Doc. No. 22), and Defendants'

motion for judgment on the pleadings (Doc. No. 49).  Defendants seek dismissal of Plaintiff's

complaint in its entirety.  For the reasons that follow, the Court will grant Defendants' motion to

dismiss and deny Defendants' motion for judgment on the pleadings.

**I.      BACKGROUND[1]**

This case concerns a consumer's claims that his deregulated electricity provider did not

abide by the terms of their service contract resulting in higher-than-expected rates for him.  In

1996, the Commonwealth of Pennsylvania "deregulated" the provision of wholesale electricity,

enabling consumers to select their own energy supplier in a competitive marketplace for the first

time.  (Doc. No. 1 ¶ 9.)  Defendant Stream Energy Pennsylvania, LLC, together with its

corporate affiliate co-defendants, participated in the electricity market as a supplier, utilizing a

referral-based model for obtaining new energy clients.  (<u>Id.</u> ¶ 10.)

Plaintiff Steven Basile, a residential electricity consumer, selected Defendants to provide

electricity in May or June of 2011.  (<u>See id.</u> ¶ 30.)  For the first two years of their relationship,

---

[1] These facts are drawn from Plaintiff's complaint, accepted as true for the limited purpose of
these motions only.

Plaintiff's rates for electricity were fixed at a determined rate by agreement.  (Id. ¶¶ 30-32.)

Near the expiration of the second contract year, Defendants notified Plaintiff that he would be

placed on a "variable rate plan," discussed in greater detail below.  (Id. ¶ 33.)  From the effective

date of the variable rate plan in 2013 until Plaintiff canceled his service contract with Defendants

on September 22, 2014, Plaintiff's rates under the plan were higher than expected and allegedly

"well above market rates."  (Id. ¶¶ 34-35.)

 The parties' relationship was governed by a contract.  (Doc. No. 1 ¶ 12.)   Though

Defendants disagree, Plaintiff alleges that two documents prepared by Defendants and sent to

Plaintiff formed the parties' contract.  (Id.)  These two documents are Defendants' "Disclosure

Statement for Residential and Small Business Electric Service" document, and Defendants'

"Welcome to Stream Energy!" letter.  (Id. ¶ 12.)  Plaintiff attached both documents to his

complaint.  (Id. at 23-30.)

 The Disclosure Statement spans five pages and 22 numbered paragraphs.  (Id. at 24-28.)

The Disclosure Statement contains the essential terms governing the relationship, including

contract duration, prices or methods of setting prices, termination, and billing.  (Id.)  Paragraph 5

of the disclosure statement pertains to "Changes in Price," and notes that for variable rate plans,

prices "may fluctuate and [are] subject to change at the sole discretion of Stream energy, based

upon the fluctuation of wholesale natural gas prices or other inputs to wholesale electric

prices[.]"  (Id. at 24-25.)  The Disclosure Statement also includes a number of familiar contract

terms, including paragraphs devoted to limitations of liability, representations and warranties,

restrictions on assignment, and an integration clause.  (Id. at 24-28.)  According to the

integration clause, "[the] Customer's contract with Stream Energy ('Agreement' as defined

herein) contains the complete understanding between Stream Energy and the Customer."  (Id. at

27.)  Despite the reference to a definition for the word, "Agreement," the term is not specifically defined anywhere in the Disclosure Statement.  (See id. at 24-28.)  Through the integration clause, the Disclosure Statement purports to "supersede[] all other written or oral communications and representations."  (Id.)

The Welcome Letter is a more informal correspondence, bearing the bolded headline, "Welcome to Stream Energy!"  (Id. at 30.)  The letter welcomes new customers to the "Stream Energy family," and assures each customer that they are "more than just a customer."  (Id.)  According to the letter, Defendants' "goal is to provide service, competitive rates and dedicated relationship to ensure your energy experience is unlike any other."  (Id.) (emphasis added).

Following the termination of their relationship in September 2014, Plaintiff initiated this action by filing a federal complaint on June 9, 2015.  (Doc. No. 1.)  Defendants filed their motion to dismiss three counts of the complaint on August 31, 2015, and their motion for judgment on the pleadings seeking dismissal of the remaining count on May 31, 2016.  (Doc. Nos. 22, 49.)  Plaintiff has stipulated to the dismissal of parts of the complaint, leaving only two counts remaining: (1) breach of contract, and (2) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, et seq. (the "CPL").  (Doc. No. 1 at 17-21.)  The complaint purports to bring claims on behalf of a class of similarly situated consumers, although the Court has not certified a class.  The motions have been fully briefed and are ripe for disposition.

## II.    LEGAL STANDARD

Defendants have filed both a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

### a.    Motions to dismiss under Rule 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint

"plausibly give rise to an entitlement for relief." See Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

### b.     Motions for judgment on the pleadings under Rule 12(c)

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a motion for judgment on the pleadings may only be granted by a district court when "there is no material issue of fact to resolve, and [the moving party] is entitled to judgment as a matter of law." D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 271 (3d Cir. 2014) (quoting Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004)).  The standard governing disposition of a defendant's Rule 12(c) motion for judgment on the pleadings is identical to the standard employed when evaluating a Rule 12(b)(6) motion to dismiss all or part of a complaint.  Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  When deciding a motion pursuant to Rule 12(c), reasonable factual inferences are to be drawn in favor of the non-moving party.  See id.

## III.   DISCUSSION

Defendants have three remaining arguments: (1) that the "economic loss doctrine" bars Plaintiff's claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, et seq. (the "CPL"); (2) that in the alternative, Plaintiff has failed to adequately allege a violation of the CPL; and (3) that the Disclosure Statement constitutes the entire agreement between the parties, and that accordingly, Plaintiff has failed to allege a breach of contract.  The Court addresses each argument in turn.

### a.     Economic loss doctrine

Defendants argue that Pennsylvania's economic loss doctrine bars Plaintiff's CPL claims because those claims are in the nature of a contractual tort and accordingly may not be raised in conjunction with a breach of contract claim.  (Doc. No. 28 at 14-17.)  In opposition, Plaintiff

argues that Pennsylvania's economic loss doctrine does not bar claims arising under the CPL. (Doc. No. 27 at 15-16.)  The Court agrees with Defendants and will dismiss this count with prejudice.

Pennsylvania's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quotations omitted).  In Werwinksi, the United States Court of Appeals for the Third Circuit observed that the Pennsylvania Supreme Court had never determined whether the economic loss doctrine barred claims arising under the CPL brought together with breach of contract claims.  Id. at 681.  Nevertheless, the Third Circuit predicted that the state supreme court would hold that the economic loss doctrine does preclude CPL claims in those circumstances.  Id. at 681.  The Pennsylvania Supreme Court has not held to the contrary since Werwinksi was announced, and this Court is bound by the Werwinski panel's decision.[2]  The parties do not dispute that the contract at issue encompasses Plaintiff's claims against Defendants.  Accordingly, Plaintiff's claims under the CPL are dismissed with prejudice.[3]

    **b.**    **Breach of contract**

Defendants have argued that the Disclosure Statement alone, and not the Welcome Letter, constitutes the parties' contract.  (Doc. No. 50 at 9-19.)  Therefore, Defendants argue, Plaintiff has failed to adequately plead a breach of contract.  (Id.)  In opposition, Plaintiff argues that the

---

[2] The Court acknowledges that in the years since Werwinski, intermediate Pennsylvania appellate courts have held that CPL claims are not barred by the economic loss doctrine, thereby calling Werwinski into question.  See Ridolfi v. State Farm Mut. Auto. Ins. Co., 146 F. Supp. 3d 619, 626-27 (M.D. Pa. 2015) (collecting cases).  However, the Court follows Third Circuit predictions on state law until a contrary pronouncement is made either by the Third Circuit itself or by the Pennsylvania Supreme Court.  See id. (quoting Cohen v. Am. Int'l Ins. Co., No. 95-5243, 1996 WL 103793, at *3 (E.D. Pa. Mar. 7, 1996)).

[3] In light of this holding, the Court does not need to address Defendants' alternative sufficiency-of-the-facts argument for Plaintiff's CPL claim.

Welcome Letter does form part of the contract.  (Doc. No. 51 at 15-23.)  Further, Plaintiff argues that he has adequately pleaded a breach of contract based on Defendants' failure to base rate variances on market factors as promised in the Disclosure Statement and by failing to set competitive rates as allegedly promised in the Welcome Letter.  (Id.)

The Court finds that Plaintiff has adequately alleged a breach of contract based on the Disclosure Statement and declines to decide whether the Welcome Letter also forms part of the contract.  A plaintiff may succeed upon a Pennsylvania breach of contract claim by establishing "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."  Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).  Here, the parties agree that a contract existed, even if they disagree about the inclusion of the Welcome Letter in that contract.  In addition, Plaintiff's complaint plainly alleges damages in the form of higher electricity costs. (Doc. No. 1 ¶¶ 53-54.)

As to breach, Paragraph 5 of the Disclosure Statement, a document Defendants prepared, provides that rates would fluctuate "at the sole discretion of Stream Energy, based upon the fluctuation of wholesale natural gas prices or other inputs to wholesale electric prices[.]"  (Doc. No. 51-2 at 2-3.)  In his complaint, Plaintiff plainly alleges that Defendants' rate changes "bore no reasonable relationship to market conditions."  (Doc. No. 1 ¶ 66.)  Defendants argue that the rate was committed to the sole discretion of Defendants based on paragraph 5 of the disclosure statement.  (Doc. No. 50 at 15-19.)  They argue that to limit their contractual discretion according to a prevailing market rate "would violate basic contractual principles, as it would render the express provision of discretion meaningless."  (Id. at 15) (citing Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 169 (3d Cir. 1987)).  However, paragraph 5

undisputedly requires Defendants to set rates that have a basis in "natural gas prices or other inputs." (Doc. No. 51-2 at 2-3.) Plaintiff has alleged that no such basis existed. (Doc. No. 1 ¶ 66.)

At this juncture, and especially in light of the Disclosure Statement's integration clause making reference to a definition that does not exist elsewhere in the document, the Court declines to determine whether the Welcome Letter forms part of the parties' contract. The Court also declines to concretely limit the scope of Plaintiff's claim for breach. Accordingly, the Court will deny Defendants' motion for judgment on the pleadings.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss pursuant to Rule 12(b)(6) and deny Defendants' motion for judgment on the pleadings pursuant to Rule 12(c). An order consistent with this memorandum follows.